UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA SALSER, ET AL.,

                Plaintiffs,                      No. 12-10960

v.                                    District Judge Arthur J. Tarnow
                                    Magistrate Judge R. Steven Whalen

DYNCORP INTERNATIONAL, INC.,
ET AL.,

                Defendants.

_____ /

**OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for Leave to File First Amended Complaint [Doc. #117], which has been referred for hearing and determination under 28 U.S.C. § 636(b)(1)(A). For the reasons discussed below, the motion will be GRANTED.

**I.    FACTS**

On March 5, 2012, Plaintiffs filed a corrected complaint [Doc. #3], based on diversity jurisdiction, raising state law claims of intentional infliction of emotional injury and conspiracy to intentionally inflict emotional injury.[1] In short, Plaintiffs allege that Defendants Dyncorp International, Inc. and Dyncorp International, LLC (collectively "Dyncorp"), which employed the decedent, Justin Pope, lied about Justin's death in Iraq, and did so in concert with other Defendant employees of Dyncorp. Plaintiffs state that while in truth, Justin was shot by Defendant Kyle Palmer, the Defendants concealed this

_____

[1] This corrected complaint, docketed three days after the original complaint was filed on March 2, 2012, was filed as of right under Fed.R.Civ.P. 15(a), without the necessity of obtaining leave of the Court. The corrected complaint contained no substantive changes, but rather corrected what appeared to be some typographical errors.

fact from Justin's family, falsely telling them that Justin shot himself, and intentionally misrepresenting the facts of the killing.

The Plaintiffs now seek leave to amend their complaint as follows:

(1) To dismiss Ray Whiting as a Defendant.

(2) To request punitive damages under Virginia law.

(3) To correct the misspellings of the names of Defendants Michael Kehoe, Noah Flemming, and Derick Agustin.

## II.    STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend complaints shall be freely granted "when justice so requires". *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Troxel Manufacturing Co. v. Schwinn Bicycle Co.,* 489 F.2d 968, 970 (6th Cir.1973); *Tefft v. Seward,* 689 F.2d 637 (6th Cir.1982); *Howard v. Kerr Glass Mfg.,* 699 F.2d 330, 333 (6th Cir.1983).

Fed.R.Civ.P. 19 permits an amendment that dismisses a non-diverse party without prejudice, in order to preserve diversity jurisdiction. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 834 n. 7, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (noting with approval, "Other courts have remanded the case to the district court with mandatory instructions to allow an amendment dismissing the nondiverse party in order to preserve diversity jurisdiction.") (citations omitted); *Aetna Cas. & Sur. Co. v. Dow Chem. Co.,* 44 F.Supp.2d 870, 876 (E.D.Mich.1999) (Edmunds, J.) ("Both district courts and appellate courts have the authority to dismiss a dispensable party who is a jurisdictional spoiler at any time during the pendency of proceedings") (citing *Newman–Green,* 490 U.S. at 832, and *Commercial Union Ins. Co. v. Cannelton Indus., Inc.,* 154 F.R.D. 164, 170 (W.D.Mich.1994) (Quist, J.)).

## III.    DISCUSSION

### A.    Ray Whiting/Diversity Jurisdiction

The Defendants contend that at the time the complaint was filed, Defendant Ray

Whiting was domiciled in Michigan, thereby destroying the basis for diversity

jurisdiction. Plaintiffs seek to amend so as to drop Whiting as a Defendant.

Fed.R.Civ.P. 21 provides that "[o]n motion or on its own, the court at any time, on

just terms, add or drop a party." It is well settled that a district court may preserve

diversity jurisdiction by dismissing a dispensable, non-diverse party without prejudice.

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 833 (1989); *Aetna Cas. & Sur.*

*Co. v. Dow Chemical Co.*, 44 F.Supp.2d 870, 876 -877 (E.D.Mich. 1999). The question in

this case is whether Whiting is considered an indispensable party. If so, he would be

subject to dismissal with prejudice; if not, he would be dismissed without prejudice. The

distinction is important because a dismissal with prejudice is a dismissal on the merits,

and therefore could possibly have a preclusive effect vis-a-vis the remaining Defendants.

Rule 19 sets forth a three-step procedure for determining whether an action should

proceed in the absence of a particular party.  *PaineWebber, Inc. v. Cohen*, 276 F.3d 197,

200 (6th Cir. 2001).  First, the court must determine whether the person or entity is a

"necessary party."   Rule 19(a)(2)(ii) states that a person is a necessary party if:

> "the person claims an interest relating to the subject of the action and is so
> situated that the disposition of the action in the person's absence may..leave
> any of the persons already parties subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations by reason of the
> claimed interest."

Secondly, if the person is a necessary party, the court asks whether the party can

be joined without eliminating the basis for subject matter jurisdiction, e.g., diversity

jurisdiction.  *PaineWebber* at 200.  If not, the court moves to the third step under Rule

19(b), and asks whether the action should continue without joinder of the party, or whether it should be dismissed because the party is "indispensable." *Id.* Rule 19(b) sets forth four factors to consider in determining whether a necessary party is also indispensable: (1) whether and to what extent a judgment rendered in the person's absence might be prejudicial to the person *or* to existing parties; (2) whether and to what extent the court can reduce or avoid the prejudice; (3) "[w]hether a judgment rendered in the person's absence will be adequate;" and (4) "[w]hether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Id.*

In their Response to Plaintiffs' Supplemental Brief [Doc. #183], Defendants state that on August 6, 2015, Ray Whiting appeared with his new counsel for a continued deposition, where he and Plaintiffs placed a stipulation on the record "whereby Plaintiffs agreed to **dismiss** [Mr. Whiting] from this action and agreed never to sue Mr. Whiting in any other forum for the claims alleged in Plaintiffs' Complaint." *Id*., at 4 (Emphasis in original). Defendants further state, "Given the stipulation, the legal argument raised in Plaintiffs' Supplemental Brief is now moot." *Id.* It is unclear from this last statement whether Defendants are now conceding that Mr. Whiting may be dismissed without prejudice, but because of this stipulation, Whiting is neither a necessary nor an indispensable party.

Because the stipulation bars Plaintiffs from pursuing any action against Mr. Whiting in this or any other forum, it is questionable whether he "claims an interest relating to the subject of the action." But even if he does, proceeding with this case in his absence will not subject any of the remaining parties to multiple or inconsistent obligations "by reason of the claimed interest." Rule 19. Therefore, Mr. Whiting is not a necessary party.

Even assuming that Mr. Whiting were a necessary party, an application of the *PaineWebber* test shows that he is not an indispensable party. First, because the stipulation protects Mr. Whiting from being sued, his dismissal from this action would not be prejudicial to him. Nor would it be prejudicial to the either the remaining Plaintiffs (who seek his dismissal) or to the other Defendants.  Earlier in these proceedings, Plaintiffs moved  to extend the summonses for certain unserved Defendants, including Ray Whiting. In their response [Doc. #28, p. 7], the Defendants conceded that these parties (including Whiting) were not necessary parties, stating that if they were not served, "Plaintiffs' cause of action would not be time barred; rather, it would simply press on without unnecessary parties to the suit....The cause of action can continue without the five (5) listed Defendants yet to be served." In other words, any judgment rendered in Mr. Whiting's absence will be adequate.

Because Mr. Whiting is neither a necessary nor an indispensable party, he may be dismissed without prejudice in order to preserve diversity jurisdiction.[2]

_____

[2] The Defendants argue in their Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. #130] that the Plaintiffs' inclusion of unserved "John Doe" Defendants destroys diversity. The Motion to Dismiss has not been referred for Report and Recommendation, and thus is beyond the scope of the present motion to amend. However, I note that under 28 U.S.C. § 1441, the removal statute, " the citizenship of defendants sued under fictitious names shall be disregarded." *See Alexander v. Elec. Data Sys. Corp.,* 13 F.3d 940, 948 (6th Cir.1994)(Jane Doe defendant against whom only generalized allegations were made should "be disregarded for purposes of diversity jurisdiction"); *Curry v. U.S. Bulk Transp., Inc.,* 462 F.3d 536, 539 (6th Cir.2006)(where the non-diverse defendants are John Does, it is proper to disregard their citizenship for the purpose of determining diversity jurisdiction). The claims against the John Doe Defendants in the present case are based on a theory of conspiracy, the facts alleged are general and non-specific. Indeed, they appear to be more passive eyewitnesses to Justin Pope's shooting rather than active participants in a conspiracy to intentionally inflict emotional distress on the Plaintiffs. *See Complaint* [Doc. #3], ¶ 27 (the Doe Defendants were "present in Justin's room and were eyewitnesses to the occurrences at the time of his death"). *See Asher v. Pacific Power & Light Co.,* 249 F.Supp. 671, 676 (N.D.Cal.1965)("[W]hether or not the joinder of the resident 'doe' will destroy diversity depends on the degree of specificity with which the complaint charges the 'doe' with

## B.   Punitive Damages

The corporate Defendants have their principal place of business in Virginia. Punitive damages are available under Virginia law. Punitive damages are not available under Michigan law. In a diversity case, this Court must apply the conflict of laws rules of Michigan. *See Muncie Power Products Inc. v. United Techs Auto Inc*., 328 F.3d 870, 873 (6th Cir. 2003). Both parties agree that the operative conflict of laws analysis flows from  *Sutherland v. Kennington Truck Serv., Ltd*., 454 Mich. 274, 562 N.W.2d 466 (1997).

In *Sutherland*, the Court recognized that strict application of the *lex loci delicti* rule is no longer viable. Rather, the Court framed the inquiry as follows:

> "[W]e will apply Michigan law unless a 'rational reason' to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* at 286-287 (quoting *Olmstead v. Anderson,* 428 Mich. 1, 29-30).

As to the first part of the test, Virginia has an interest in having its law permitting punitive damages applied.  Virginia permits punitive damages where the defendant's conduct " was so willful or wanton as to show a conscious disregard for the rights of others." *Booth v. Robertson,* 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). "The purpose of punitive damages is to provide 'protection of the public, as a punishment to [the] defendant, and as a warning and example to deter him and others from committing like

---

actionable conduct.... If ... the allegations ... [are] so general that they give no clue as to whom they could pertain, then the parties ... should be disregarded for the purposes of determining diversity jurisdiction.")(Citations omitted).

-6-

offenses.'" *Huffman v. Love*, 245 Va. 311, 315, 427 S.E.2d 357, 360 (Va.,1993), quoting *Baker v. Marcus,* 201 Va. 905, 909, 114 S.E.2d 617, 621 (1960). Given the claims in this case, if the jury accepts Plaintiffs' version of events, it will necessarily have found that Defendants' conduct showed "a conscious disregard for the rights of others."

Nevertheless, Defendants argue that because "Virginia is only one of ten states that applies the *Lex Loci Delicti*," *Defendants' Response* [Doc. #134] at 17, and because the events giving rise to Plaintiffs' claims occurred in Michigan, Virginia does not have an interest in permitting otherwise available punitive damages. Thus, Defendants argue, "Virginia's conflict-of-law rule dictates the application of Michigan law." *Id*. at 19. Both Defendants and Plaintiffs rely on Judge Feikens' opinion in *In re Aircrash Disaster Near Monroe, Mich. on January 9, 1997*,  20 F.Supp.2d 1110 (E.D.Mich. 1998).

*In re Aircrash Disaster* observed two basic principles. First, the domicile of the *plaintiff* is not relevant to the conflict of laws resolution. Second, the mere fact that a corporate defendant is incorporated in a particular state–that the state has a "substantial relationship with the defendant"– does not necessarily afford that state an interest in the litigation.  Rather, "a court should look at the punitive damage laws of jurisdictions having **both** contact with the lawsuit and a significant relationship to a defendant." *Id*. at 1112. (Emphasis in original). The fact that Defendant Dyncorp is incorporated in Virginia does not in and of itself bring Virginia law on punitive damages into play; the more salient issue is Virginia's contact with the lawsuit.

This brings us to the *lex loci* issue. Specific acts that are alleged to have constituted intentional infliction of emotional distress in this case occurred in Michigan, so as to the substantive intentional infliction claim, Defendants' have a point.  However, it is significant that the claims in this case include *conspiracy*. Plaintiffs allege that regardless

of where certain overt acts occurred, the conspiracy was orchestrated out of Dyncorp corporate headquarters in Virginia. Had this case been filed in Virginia, application of that state's *lex loci delicto* rule to the conspiracy claim would therefore call for the application of Virginia law on punitive damages. Again, Virginia has an interest in having its punitive damages law applied to this case as to the conspiracy claim.

 The next question under *Sutherland* is whether Michigan's interest in not permitting punitive damages should be applied despite Virginia's interests. In *In re Disaster at Detroit Metropolitan Airport on Aug. 16, 1987,* 750 F.Supp. 793, 801 (E.D.Mich. 1989), Judge Cook noted that Michigan's preclusion of punitive damages

> "reflects a producer protective policy. Such a doctrine is designed to induce companies to conduct business in Michigan by protecting domiciled producers from excessive financial liability. By protecting the economic health of companies that conduct business in Michigan, the state derives substantial revenues in sales and taxes, directly and indirectly, and furthers the economic well being of the entire state."

Likewise in, *In re Aircrash Disaster Near Monroe, Mich.,* at 1112, Judge Feikens stated, "Michigan has a predominant interest in protecting the financial integrity of corporations who conduct substantial business within its borders because this enables its citizenry to earn livelihoods. Because a bar on punitive damages furthers this policy, *In re Disaster* applied Michigan's punitive damages law."

Unlike the airlines involved in the above cases, Dyncorp does not conduct substantial business within the borders of Michigan, does not produce revenue within Michigan, and does not significantly enable Michigan citizens to earn their livelihood. Therefore, Michigan does not have any interest in protecting Dyncorp's financial integrity.

In summary, because Virginia has a substantial interest in having its punitive damage law applied, and Michigan has no interest in having its bar to punitive damages

applied to foreign Defendants who have no significant economic connection to this case, there is a "rational reason" to apply Virginia law on punitive damages to Plaintiffs' conspiracy claim. *Sutherland* at 286-287.

### C.    Correction of Misspellings

Defendants have no objection to this amendment. Neither do I.

### IV.    CONCLUSION

For these reasons, Plaintiffs' Motion for Leave to File First Amended Complaint [Doc. #117] is GRANTED.

IT IS SO ORDERED.


　　　　　　　　　　　　　　　　 /s/R. Steven Whalen_____
　　　　　　　　　　　　　　　　 R. STEVEN WHALEN
　　　　　　　　　　　　　　　　 UNITED STATES MAGISTRATE JUDGE
Date: August 17, 2015


Certificate of Service

I certify that a copy of this order was served upon parties of record on August 17, 2015 via electronic or postal mail.
　　　　　　　　　　　　　　　　 /s/A. Chubb_____
　　　　　　　　　　　　　　　　 CASE MANAGER